UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: | : | |
| BELVEDERE DEVELOPERS, LLC<br>Debtor | : | BK No. 05-15710<br>Chapter 11 |

**DECISION AND ORDER**

APPEARANCES:

Peter J. Furness, Esq.
Attorney for Debtor
BRENNAN, RECUPERO, CASCIONE,
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, Rhode Island 02909

Jeffrey S. Brenner, Esq.
Attorney for Center Development Corporation
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903

Richard C. Pedone, Esq.
Attorney for Center Development Corp.
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-2131

Charles D. Blackman, Esq.
Attorney for Joseph M. Brito
HINCKLEY ALLEN & SNYDER LLP
1500 Fleet Center
Providence, Rhode Island 02903

Jennifer V. Doran, Esq.
Attorney for Joseph M. Brito
HINCKLEY ALLEN & SNYDER LLP
28 State Street
Boston, Massachusetts 02109

Matthew J. McGowan, Esq.
Attorney for Harkins Development Co.
SALTER McGOWAN SYLVIA & LEONARD, INC.
321 South Main Street
Providence, Rhode Island 02903

BK No. 05-15710

APPEARANCES cont'd.

Leonard DePasquale, Esq., AUST
Office of the United States Trustee
10 Dorrance Street
Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 05-15710

Before the Court is Center Development Corporation's Motion for relief from stay, which is based essentially on the argument that the Debtor has not complied with the terms of the parties' Consent Order, filed on February 2, 2006, Document No. 67. The Debtor opposes the motion on the ground that it has complied with the Consent Order, and also that Center has not acted in good faith. We have had several days of hearings on this matter and negotiations between the parties have taken place prior to and during these proceedings.

The Consent Order required the Debtor to file a "feasible" plan of reorganization by February 23, 2006, and under said Order, the plan was to provide for, among other things:

> (1) either a sale, refinancing, or development of the Debtor's real estate in Bristol, "with a closing to occur by May 24, 2006";
> (2) Payment of Center's allowed secured claim by May 24, 2006, which was stipulated to be $800,000 in the consent order;
> (3) the establishment of an escrow account to deposit any sale proceeds;
> (4) "A feasible plan to resolve the issue of Joseph Brito's [Sr.] claim of a Right of First Refusal pertaining to the Vacant Lot and the Carriage House Lot"; and
> (5) "An Offer to purchase, refinance or develop the Property with reasonable and customary conditions, or if a refinancing and/or development, a commitment letter from a feasible entity with reasonable and customary conditions."

The Order further provided that if the Debtor fails to file a "plan by February 23, 2006, receive confirmation of the Plan by the

Court, or close as set forth above, Center's Motion for Relief will be granted and Center may immediately record its foreclosure deeds, and thereby foreclose and extinguish the right of redemption." The Consent Order nowhere provides that the Debtors' February 23 proposals must have the approval of Center as of February 23.

Based on the presentations of both Center and Brito, the Court understands Center's position to be that because the Debtor does not have a finalized and formal purchase and sale agreement and a completed written agreement regarding the Brito Right of First Refusal, it has not complied with the Consent Order. In this posture, the parties embarked on an acrimonious hearing wherein the Court unwisely, in hindsight, permitted the evidence and the examinations to go far beyond what turned out to be necessary. In any event, after much overkill, and clients' time *and expense* for which the Court apologizes, I conclude that the Debtor has met the requirements of the Consent Order and that Center's objections are more appropriately addressed at the confirmation hearing.

The Debtor timely filed a plan of reorganization, proposing to sell its real estate to Harkins Development Company for $2.6 Million in cash, with a closing by May 24, 2006. Harkins' attorney, Matthew McGowan testified credibly that Harkins is ready, willing, and able to perform, that the parties are negotiating a formal purchase and sale agreement, and that Harkins is doing its

due diligence. The Debtor presented a memorandum from Spinnaker Capital Partners stating that it is holding $13.6 Million in capital commitments available for Harkins to purchase and develop the Debtor's property. (Debtor's Ex. 13). The fact that a formal purchase and sale agreement was not signed by February 23, or that Harkins' due diligence period extends beyond February 23, does not violate the Consent Order or ipso facto make the proposed plan not feasible. Putting things in perspective, the Debtor and Center filed their Consent Order on February 2nd, with the Plan to be filed by February 23rd, some 20 days later, which it was. There is absolutely no way the parties could have intended, or that they did in fact intend, that within 20 days the Debtor was required to obtain a buyer, negotiate and execute a fully detailed and final purchase and sale agreement, and to have all contingencies satisfied - and it is this Court's ruling that none of those acts were required under the Consent Order. Rather, I find that the letter and the spirit of the Consent Order required the Debtor to provide a road map of how this case would be resolved by May 24, 2006, and to have the rudiments in place by February 23, 2006. There is nothing in the Consent Order requiring the way to be completely paved and landscaped by February 23rd. The Debtor has fulfilled its initial obligation and has complied with the terms of the Consent Order.

Regarding Mr. Brito, Sr., the Debtor was to provide a "feasible" plan by February 23 to resolve Brito's Right of First Refusal. The evidence is that the Debtor has complied. The Debtor's principal, Mr. Ted Barrows testified, in my opinion credibly, that on February 22 & 23, 2006, he called Mr. Brito, Sr., in Florida and that an agreement was reached as to how they would resolve Brito's Right of First Refusal under a plan of reorganization. According to Barrows, Mr. Brito, Sr., agreed to relinquish his Right of First Refusal for $600,000. While the timing of the payment was not discussed, I find that Mr. Brito, Sr., understood that this would be part of a plan of reorganization. Based on Barrows' conversation(s) with Mr. Brito, Sr., the Debtor filed its Plan stating that Brito would be paid $600,000 at closing in exchange for extinguishing his Right of First Refusal. As of February 23rd, based upon Barrows' conversations with Mr. Brito, Sr., the plan was "feasible." There is no requirement in the Consent Order that the Debtor have a formal, written agreement with Brito, Sr., setting forth all of the terms of their agreement by February 23.[1] Neither does the evidence show that Mr. Brito, Sr., was not authorized to act in his

[1] It must also be remembered that the Britos are not obligated to sell their Right of First Refusal to anyone, for any price - they may also choose (or be compelled under a Plan) to exercise their Right of First Refusal.

own behalf or that he was incompetent to so act. In fact, the evidence is quite to the contrary.

Center argues that because the agreement with Brito was not reduced to a formal writing by February 23, it violates the Statute of Frauds and renders any such agreement unenforceable. Without deciding the point, it appears that Center is trying rewrite the Consent Order to add a requirement that does not currently exist. The Debtor was required, under the Consent Order, to propose a feasible plan to deal with Brito, Sr., by February 23. The resolution of Brito's Right of First Refusal did not have to be completed by February 23, it only needed to exist, based on a credible understanding. Mr. Barrows' conversations with Brito Sr., established the foundation for the plan on this issue and enabled the Debtor to comply with the terms of the Consent Order.

Center urges the Court to focus on what happened after February 23, 2006, and while the Court permitted a lot of evidence to come into the record regarding the parties' post February 23rd dealings, in retrospect I don't believe that much or any of that evidence is relevant to what the parties agreed to in the Consent Order. Under the Consent Order, February 23rd is the operative date, and if either Mr. Brito, Senior or Junior, changed their mind after February 23rd, or added conditions to their deal with the Debtor, that would not affect the Debtor's obligations under the

Consent Order. The Debtor was to have a feasible plan for dealing with Brito as of February 23, and it did that. If things change between February 23 and the confirmation hearing date which would put into question the plan's feasibility, that will be an issue at confirmation.

There has also been much argument and some evidence regarding issues of good faith (or lack thereof) on the part of Center. Again, I don't think that is an issue that needs to be decided or even addressed today, as the Debtor has, in my view, complied with the Consent Order in all respects, and so this Court will make no rulings today on any issues regarding good faith.

For the foregoing reasons, Center's Motion for an order finding that the Debtor has not complied with the Consent Order, and allowing Center to have Relief from Stay is DENIED, without prejudice, to raise any appropriate issues at confirmation.

Center's objection to this ruling and Order is noted, and while I don't see this as a final order, if Center disagrees and wishes to pursue any appellate procedures it deems appropriate, then I will *sua sponte* entertain Center's oral motion for a stay pending appeal, and deny the same on the ground that the record does not warrant a stay - especially the likelihood of success on appeal.

Entered as an Order of this Court.

BK No. 05-15710

Dated at Providence, Rhode Island, this 17th day of March, 2006.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 3/17/2006